FLETCHER et al. v. McKEON et al.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

MORTGAGES — FORECLOSURE — RECEIVER —TENANT—RECORD—NOTICE—INJUNCTION.

Plaintiff owned a recorded mortgage, which provided that on default and foreclosure a receiver should be appointed to collect the rents and profits, to apply on the mortgage debt. Just before default the mortgagor leased the premises to a tenant, who paid five months' rent in advance. After default, plaintiff brought an action to foreclose, and a receiver was appointed. *Held*, that the tenant took subject to the mortgage, and should be enjoined from collecting any rent from subtenants after the receiver was appointed.

Appeal from special term, New York county.

Action by Austin B. Fletcher and others against John McKeon and others. From an order denying a motion for an injunction (71 N. Y. Supp. 812), plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Joseph M. Lesser, for appellant receiver.
Ralph Nathan, for respondent Luft.

HATCH, J. This action was brought April 1, 1901, to foreclose a mortgage executed and delivered about May 5, 1894, which was duly recorded on May 10, 1894, upon certain premises on East 117th street, in the city of New York; and on April 22, 1901, a receiver of the rents and profits was duly appointed, and he duly qualified. After the commencement of this action it was discovered that one Ignez Luft had on February 20, 1901, leased the premises in ques-

tion from the mortgagor for a period of one year from March 1, 1901, and had paid five months' rent in advance. Thereupon the papers in the action were amended nunc pro tunc by inserting Luft's name, and he was duly served with a summons and notice of pendency of the action, as well as with a copy of the receivership order. He did not appear in this action. He did, however (claiming the right by virtue of his lease), continue to collect the rents falling due after this time; and a motion was thereafter made by the receiver to punish Luft for contempt, which motion seems to have been denied. On May 27, 1901, the receiver obtained an order to show cause why Luft should not be enjoined from collecting or attempting to collect the rents accruing from month to month from the premises. This motion was also denied, and it is from the order entered thereon that this appeal is taken. In the meanwhile, however, Luft has collected the rents for the months of May, June, and July, amounting to $750, and the premises themselves were sold under foreclosure in July, 1901.

The plaintiffs in this case, so far as Luft is concerned, have been defeated in their right to the rents which accrued from the subtenants in occupation of the premises after the appointment of the receiver, and after Luft had been made a party to the action, and served with notice of the existence of the receivership. Under and by virtue of the recording acts, plaintiffs' mortgage, having been duly recorded, was constructive notice to everybody dealing with these premises of the existence thereof; and all subsequent purchasers or incumbrancers were chargeable with notice thereof, and whatever estate such purchaser took in the premises was subject thereto. Such is an ancient rule of law (Parkis v. Alexander, 1 Johns. Ch. 394), and such is the express construction of the statute (Tarbell v. West, 86 N. Y. 280.) The mortgagee becomes, by virtue of his mortgage, in a qualified sense, a purchaser, and in such sense the mortgage is deemed a conveyance; and when the equity of redemption is foreclosed the purchaser thereunder takes all the title which the mortgagor had in the premises. Bank v. Levy, 127 N. Y. 549, 28 N. E. 592. During the period that the mortgagor is in occupation of the premises he is entitled to the rents, issues, and profits thereof, as against the mortgagee, and may not be defeated in his right thereto, except upon a foreclosure of the mortgage. Such right to the rents, issues, and profits continues until the foreclosure of the mortgage is had, and right to possession by the purchaser has ripened under the foreclosure proceedings. Argall v. Pitts, 78 N. Y. 239; Whalin v. White, 25 N. Y. 462. Where, however, there has been a forfeiture of the conditions of the mortgage, which entitles the mortgagee to foreclose the same, a different condition is at once produced. As some time must necessarily elapse in order to procure judgment, and as all parties sought to be charged with the decree in foreclosure are necessary parties, and entitled to notice, it must always be that during this period rents may accrue, which, by reason of the forfeiture of the provisions of the mortgage, equitably entitle the mortgagee to receive the same for application upon his mortgage debt. Under such circumstances

a court of equity has general equitable power to appoint a receiver of the rents, issues, and profits, and thereby make the decree of foreclosure which shall be finally entered relate back to the time when the foreclosure was begun; and rents accruing subsequent to the appointment of the receiver may be taken and held for application upon the mortgage debt. Hollenbeck v. Donnell, 94 N. Y. 342. Most mortgages at the present day provide for the appointment of a receiver pending the foreclosure of the mortgage, and such a provision is contained in the present mortgage; and while a receivership, even under such circumstances, will be denied when the mortgaged property is clearly more than sufficient to pay the mortgage debt, yet in all cases where there is doubt upon such a question the courts will protect the right of the mortgagee thereunder, and, in the absence of such provision, if it appear that the property is inadequate to secure payment of the mortgage debt, equity will impound the rents for the benefit of the mortgagee. Ross v. Vernam, 6 App. Div. 246, 39 N. Y. Supp. 1031. These principles of the law have become so well settled, and are now so frequently applied, that their soundness cannot be questioned.

It is sought to defeat this right which exists in the mortgagee in this case, and thus far it has been successful, for the reason that, before default was made in the terms and conditions of the mortgage, the owner of the equity of redemption leased to the defendant Luft these premises for a period of one year from the 1st day of March, 1901, and received payment of five months' rent in advance; and it is now solemnly asserted that by this act the owner of the equity of redemption has secured to himself this amount of rent, and that this lessee has the continued right to collect these rents until there shall have been an actual foreclosure and sale of the premises, and the delivery by the sheriff of his deed to the purchaser, and demand for possession made thereunder. Such is not the law, and never was; nor can it be found adjudicated in any well-considered case. The conclusion in support of it is based upon a fundamental misconception of the law. When the defendant Luft took his lease of the premises, he purchased an interest in land. If there had been no other outstanding incumbrance upon the property, he could have recorded his lease, and would have been protected thereunder as against all subsequent purchasers or incumbrancers; but at the time when he took his lease the plaintiff's mortgage was in existence, and had been since 1894, and was duly recorded, and was notice to him; and he took his lease subject thereto, and became bound by its terms, and by the remedies which might be invoked to enforce it, as did the owner of the equity of redemption under the mortgage. He stepped into the latter's shoes, and paid his money as rent in advance at his peril, subject to the right of the mortgagee, upon default in the terms of the mortgage, to foreclose the same, procure the appointment of a receiver, and take such rents from that time for application upon the mortgage debt. The owner of the equity of redemption could not defeat the right of the mortgagee by a lease of the premises, and secure payment of rent in advance. To hold that such right existed would open the

door for successful fraud in every case of rent-productive mort-
gaged premises, where the security is inadequate for the payment
of the mortgage debt. All that would be necessary to secure rents
from the time of default until there could be a sale under a de-
cree of foreclosure, and the production of a deed by the purchaser,
would be for the owner of the equity of redemption to execute a
lease, receiving rent in advance. During such period the earning
power of the property would be at the mercy of such owners, even
though it was utterly inadequate to pay the mortgage debt. And
when we consider the obstacles which may be thrown in the way
of the foreclosure of an honest mortgage, it is easily seen that fraud
might arise out of such a condition which would be intolerable.
It is sufficient now to say that, by the application of plain, equitable
principles, no such result is permissible, and no such condition will
be tolerated.

The court below based its decision upon Wyckoff v. Scofield, 98
N. Y. 475, and Rider v. Bagley, 84 N. Y. 461. In the first of these
cases the question arose between the owner of the equity of redemp-
tion and the mortgagee. Such owner at the time of the commence-
ment of foreclosure was served with a restraining order from col-
lecting rents, and also a notice of motion for the appointment of a
receiver. The injunction was subsequently modified by agreement
between the parties so as to permit the defendant's agents to col-
lect the rents, and retain them to abide the order of the court.
Upon the hearing of the motion the court vacated the injunction,
and denied the application for the appointment of a receiver. It
was held that the stipulation of the parties as to the collection of the
rents was not an agreement for any further claim thereon than such
as was given by the mortgage, and, as the injunction and receiver-
ship were both denied, the defendant was held entitled to the rents.
This decision was clearly right, for the reason that until there was
a judgment of foreclosure the owner of the equity of redemption
was entitled to the rents, unless there was the intervention of a
receiver, and that never occurred; but the court recognizes the doc-
trine announced in Hollenbeck v. Donnell, and cites the same in its
opinion with approval. The doctrine of that case manifestly has no
application to the facts of the present. In the second, the ques-
tion arose between an assignee in bankruptcy of the owner of the
premises and the mortgagee. Of course, the assignee stood in the
place of the prior owner. It was held that Bagley, as the owner
of the equity of redemption, was entitled to the rents prior to the
appointment of a receiver, but the case states, "By the appointment
of a receiver, the plaintiff obtained an equitable lien upon the un-
paid rents, and upon them only." Bagley, after notice of the pend-
ency of a motion for the appointment of a receiver, collected some of
the rents before his appointment; and it is the clear intimation of
the opinion that for such act he was guilty of contempt,—the right
to punish him, however, being discretionary with the supreme court.
It is evident that the misconception which arose in the mind of the
learned court below was in treating Luft as having paid the rent to
the owner of the equity of redemption prior to the appointment of the

receiver.   This overlooks the fact that Luft did not pay rent which had accrued from the premises.   What he did was to purchase a leasehold estate in the premises.   The rents therefrom arose after as they did before.   Luft purchased such estate at his peril, and subject to the lien of the plaintiff's mortgage.   The rents which he collected did not go to the owner of the equity of redemption. They were the product of the estate which he had purchased, and arose therefrom; and he could no more purchase a leasehold interest in this property, free of the incumbrance of the mortgage, than he could purchase a part of the freehold, freed therefrom.   None of the other cases cited by the respondent in any wise affects or changes the rule of the cases we have cited.   When Luft continued to collect the rents after he received notice of the appointment of the receiver, he was guilty of a contempt of court, and should have been punished therefor.   The present application was for an injunction, which should, upon the undisputed proof, have been granted, as it was essential to protect the plaintiff's interest.

It follows that the order should be reversed, with $10 costs and disbursements.   As, however, an injunction would now be futile to protect any right of the plaintiff, it should not be granted; but the plaintiff may resort to such remedy as he is advised, without prejudice by the determinations had upon the former applications.   All concur.