People ex rel. Huff *v.* Warden, etc. **681**

Misc. 681]                    Supreme Court, May, 1922.

The People of the State of New York ex rel. Slaughter W. Huff, Relator, *v.* The Warden and Keeper of the Prison of the City of New York, Borough of Queens, and H. Miller, City Magistrate of the City of New York, Borough of Queens, Defendants.

The People of the State of New York ex rel. Robert C. Lee, Relator, *v.* The Warden and Keeper of the Prison of the City of New York, Borough of Queens, and H. Miller, City Magistrate of the City of New York, Borough of Queens, Defendants.

Supreme Court, Queens County, May, 1922.

Habeas corpus — street railway — mortgage foreclosure — segregation of property by receivers — filing of notice fixing fare under Public Service Commission Law, § 28 — arrest for failure to file notice under section 29 — when release of defendants will be ordered.

Relators were duly appointed the receivers of all the property of the New York and Queens County Railway Company which was subject to the lien of a certain mortgage given by the Steinway Railway Company of Long Island City which in 1896 had been merged into the former company. The mortgage covered only the property owned by the mortgagor within the corporate limits of Long Island City. The order of appointment empowered the receivers to take possession of the mortgaged property, to exclude the New York and Queens County Railway Company therefrom and to operate the same. The receivers gave notice under section 28 of the Public Service Commission Law that beginning on a stated date and hour they would operate that portion of the lines of the New York and Queens County Company covered by the mortgage, for which portion of said lines no rate was ever fixed, and filed with the transit commission a schedule showing the rate to be charged, *i. e.,* five cents, but they did not, before beginning operations, file a notice with the transit commission under section 29 of the Public Service Commission Law, which applies only when a change is to be made in any rate which has been previously filed and published by a common carrier. The receivers having been held for trial by the city magistrate, after an examination, upon a charge of violating section 29 of the Public Service Commission Law, severally sued out a writ of habeas corpus. *Held,* that upon the established facts relators had not violated any law, the action of the magistrate was unwarranted, and the writ will be sustained and the relators discharged from custody.

RETURN of writ of habeas corpus.

*Alfred T. Davison (William E. Stewart,* of counsel, and *Henry V. Poor* and *Hersey Egginton,* on the brief), for relators.

*Dana Wallace,* district attorney, for respondents.

Cropsey, J. After an examination before a city magistrate the relators have been held for trial in a Court of Special Sessions of the City of New York charged with a violation of section 29 of the Public Service Commission Law. By virtue of section 56 of the same law every officer or agent of a common carrier who

violates any of the provisions of that law commits a misdemeanor. The relators' contention is that the information filed with the magistrate does not charge a crime and that the proof taken before the magistrate shows that no crime has been committed. There is no disputed question of fact involved.

Section 29 of the Public Service Commission Law provides that " no change shall be made in any rate, fare or charge, or joint rate, fare or charge, which shall have been filed and published by a common carrier in compliance with the requirements of this chapter, except after thirty days' notice to the commission " and upon compliance with other conditions " unless the commission otherwise orders." The established and conceded facts here are as follows: In 1892 the Steinway Railway Company of Long Island City, owning a franchise which covered only certain streets in Long Island City, made a mortgage of its property and franchises to the State Trust Company. Thereafter and in 1896 the said company became merged into the New York and Queens County Railway Company, pursuant to the provisions of section 15 of the Stock Corporation Law. The latter company had franchises covering streets outside of Long Island City and after the merger of the Steinway Company with it the New York and Queens Company operated lines of surface cars under the franchises held by the Steinway Company as well as under its own franchises. And prior to the events which preceded and led up to these prosecutions the New York and Queens Company was operating over all of the said lines for a single fare. The operating company, however, failed to meet its obligations and did not pay the amounts due upon the mortgage that has been mentioned and which had been given by the Steinway Company. Thereupon the holders of that mortgage brought an action in this court to foreclose and in that action the relators herein were appointed receivers. The order appointed them receivers of all the property of the New York and Queens Company which was subject to the lien of the mortgage made by the Steinway Company. The court could not and did not give the receivers any jurisdiction over the other portions of the New York and Queens Company's property which were not included in the mortgage mentioned. And that mortgage covered only the property formerly owned by the Steinway Company, and none of that extended outside of the limits of Long Island City. The mortgage did not cover other properties of the New York and Queens Company which are outside of that city. The order empowered the receivers to take possession of the mortgaged property, to exclude the New York and Queens Company therefrom and to operate the same. The receivers gave notice that beginning on a stated date and hour

they would operate that portion of the lines of the New York and Queens Company that was covered by the mortgage, and filed with the transit commission a schedule showing the rate to be charged. Upon the announced date the receivers assumed possession of the mortgaged property and commenced the operation of the road thereover, charging a five-cent fare. The receivers at no time have operated beyond the limits of Long Island City. The New York and Queens Company has continued to operate the remaining portion of its lines which were not covered by the mortgage and which were outside of the limits of Long Island City. That company has charged a five-cent fare on its lines and there has been no transfer privilege accorded between the lines operated by the receivers and those operated by the company. Nor has there been any through service. The cars operated by the receivers have not gone beyond the limits of Long Island City. Before beginning such operation the receivers did not file a notice with the transit commission under section 29 of the Public Service Commission Law. They did, however, file a notice under section 28.

The question here is whether the provisions of section 29 apply to the facts as stated. A portion of that section has already been quoted. It applies only when a change is to be made in any rate which has previously been filed and published by a common carrier. This section admittedly does not apply to cases in which no rates of fare have ever been filed. And to such situations the provisions of section 28 apply. No rates were ever filed by the Steinway Company. It was merged into the New York and Queens Company in 1896 before the provisions of section 29 first became operative. The only rates that have ever been filed, so far as the record shows, are those that were filed by the New York and Queens Company covering its entire operation. There never was any rate filed covering only those lines that were included in the mortgage mentioned. The receivers do not seek to change any rate of fare. They have authority only to operate the lines covered by the mortgage. For them no rate was ever filed. The operation of them by the receivers is in effect a new operation, new at least in the sense that no such operation had been had previously under the provisions of the Public Service Commission Law. When the Steinway Company operated those same lines that law had not been passed. The receivers could not operate cars over all the lines of the New York and Queens Company. The order appointing them gave them no such power. On the contrary, it limited their power to the lines covered by the mortgage. The receivers in no way could fix a rate for all the lines of the New York and Queens Company even if they sought to do so.

Upon the merger of the Steinway Company into the New York and Queens Company the former ceased to exist for most purposes. But so far as the rights of the holder of the mortgage which it had given are concerned the Steinway Company is still an existing corporation as if no merger had ever taken place. For the purposes of the mortgage holder it is a corporation separate and distinct from the New York and Queens Company. See Stock Corp. Law, § 15; *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; *Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 id. 25. And the receivers' situation here is just the same as would be the situation of the purchaser of the mortgaged property under a judgment of foreclosure and sale. And such rights relate back to the time of the appointment of the receivers in the foreclosure action. *Fletcher* v. *McKeon*, 71 App. Div. 278, 279, 280.

The fact that the mortgaged lines have been operated since the merger as a part of the merging company's system in no way changes the situation. The holders of the mortgage are entitled to have the property covered by it separated from the rest of the operating company's properties and to have the mortgaged lines maintained as independent lines. The situation is quite the same as if the Steinway Company had in 1896 instead of mortgaging its property given a lease of it to the New York and Queens Company, which lease now expired. The lines belonging to the Steinway Company could then have been returned to it and it would be entitled to operate them independently. And if the Steinway Company had at no time filed any rate it could not file a change of rate under section 29 but could only do as the receivers did, namely, file a notice of a rate under section 28.

Section 29 clearly does not apply to the facts that appear here. If section 28 applies, then concededly the receivers have complied therewith. And if neither of these sections apply then the case is one for the action of the legislature. It is not proper for the court to legislate. To hold, as the transit commission seems to have done, that section 29 applies here would be merely to enact a law and not to construe or enforce one. In fact the opinion of the transit commission plainly recognizes that the section does not cover the facts here presented.

The contention of the district attorney, that it was incumbent upon the receivers " to so operate the railway lines as to continue the five-cent fare over the entire system of the New York and Queens Railway Company," finds no foundation in law or fact. The receivers admittedly have no right to operate any line of the New York and Queens Company except those covered by the mortgage. It is true that the transit commission under section 49

of the Public Service Commission Law may establish a joint rate under certain conditions, but whether or not that shall be done is not involved in this controversy. Under the district attorney's contention the receivers had no right to operate the lines of which they were appointed receivers no matter what rate of fare they charged until they had filed a change of rate under section 29 and until the transit commission had acted thereupon, which might have been any time within eleven months. To construe the law as the district attorney would have it construed and as it necessarily must be construed, if there is basis for these prosecutions, would work a great hardship to the public. It would wholly deprive them of any transit upon any of the mortgaged lines and they would all be required to suspend operation. If the statute plainly indicated that such was to be the effect, then these prosecutions might lie. But no one who is seeking to uphold and enforce the law and protect the rights of all parties could construe the present statute to mean any such thing as is contended. The present situation, so far as the statutes show, has never been considered by the legislature, or if considered, at least has never been covered by enactment..

In the further suggestion of the district attorney, that if railroads were permitted to split up into separate units and then file new schedules of rates, it would be possible for any company to evade the provisions of the law " by so mortgaging its property that each mortgage could be separately foreclosed and the receivers appointed could each claim to be new common carriers and more fare than that permitted could thus be charged and the public defrauded," he seems to have overlooked the provisions of section 55 of the Public Service Commission Law which give the transit commission jurisdiction over the making of mortgages by railroad companies, and under this the commission of course could prevent the happening of any such thing as is supposed. In the present case the mortgage was made years before the transit commission or its predecessors came into existence or the Public Service Commission Law was first adopted.

There are a number of technical points raised which I have not discussed. To me it seems far preferable to decide such matters as these upon the merits and not upon a mere technicality. Decisions made upon mere matters of form and not of substance and which avoid a discussion and determination of the main questions involved upon their merits tend to create a lack of confidence in the courts. The provisions of section 29 clearly do not apply and I think that should be decided now instead of avoiding that question and making the decision rest upon some mere technicality or omission in the proof.

The corporation counsel was allowed by the court to file a brief. If the contentions contained therein were sound, then his brief would be an excellent document on behalf of the receivers. The corporation counsel maintains " that the receivers of the property of the former Steinway Railway Company are not common carriers." If the receivers are not common carriers then they cannot possibly under any construction of the law be guilty of a violation of section 29, for that section by its terms applies only to common carriers. If the corporation counsel is correct in his contention then that would be an additional reason for concluding that there was no basis for the prosecution of these relators. For the purpose of this decision, however, I am assuming without deciding it that the receivers are common carriers. In the same brief the corporation counsel refers to and quotes " section 79 of the Railroad Law, as amended by chapter 676 of the Laws of 1892," as having some application to the matter in hand. He has omitted to note, however, that this section was not amended by that act and was repealed a number of years ago and that while its provisions, or some of them, are found in other sections in the present Railroad Law, they apply only to steam railroads and not street surface railroads such as the one in question.

Upon the established facts the receivers have not violated any provision of law and their holding for trial by the magistrate was entirely unwarranted. The writs must, therefore, be sustained and the relators discharged from custody.

Writs sustained.