The complainants seek to foreclose a possible equity of redemption which may exist in favor of the defendants, who are tenants in possession of the premises; they having been omitted as parties defendants in the original foreclosure suit in which a decree was entered, and a sale had thereunder. In re Monroe v.Smarak et al. (Chancery Docket 100, page 662).
Monroe was the complainant in the conventional foreclosure proceeding. He purchased the property, described in the bill of complaint, at the sheriff's sale, at a nominal bid of $100. He conveyed the premises to one Ross, who afterward conveyed it to the complainant Mesiavech.
The defendants, Newman and Frank, occupied the premises under a lease, which was subsequent to the foreclosed mortgage. A second mortgage for $7,500 was cut off by the decree in the foreclosure proceedings. *Page 193 
The answer herein raises the issue of the right to insist upon ordinary, conventional foreclosure instead of strict foreclosure. Shall there be a resale? Or shall there be a time fixed within which the defendants have the right to redeem, failing in which, they may be barred?
In the original foreclosure proceedings instituted by Monroe, the defendants, being tenants of the mortgaged premises, were not made parties defendants to that suit. It appears that A. Michael Lepore, Monroe's solicitor at the time of the filing of the original bill of foreclosure, had knowledge of the tenancy, and of the lease held by these defendants, dated October 1st, 1932, under which they were required to pay a monthly rental of $125. Notwithstanding the expressed stipulation of $125 monthly rental, the tenants paid but $75 per month. Lepore, knowing the stipulation in the lease, was also aware that the tenants were not paying the amount agreed upon. Consequently, he concluded that since the terms of the lease were being ignored, it had been waived and discarded by the parties to it. Pending the foreclosure proceedings, Lepore collected the monthly rental of $75 from these defendants.
Immediately prior to the institution of the foreclosure suit, the then owner of the premises was willing to convey to the mortgagee for a consideration; but they could not agree as to the amount, and, thereafter, the foreclosure suit was initiated. Immediately prior to the decree, and the sale of the premises thereunder, Lepore requested the defendants to permit him to examine the lease. In response to his request, the defendant Newman presented it to him and he examined it. Lepore says there was nothing in, or about, it to indicate that a change, or a modification of the amount of $125 monthly rent had been made; this unchanged instrument, plus the $75 monthly payment, he says, convinced him that the parties had abandoned the lease. He then told Newman the lease "was no good." Newman says that when he exhibited the lease to Lepore that there was attached to it a rider which modified or changed the amount of the monthly payment from $125 to the sum of $75. Lepore says after the exhibition *Page 194 
of the lease to him by Newman, that he proceeded with the foreclosure proceedings and concluded them with the sale by the sheriff for the amount above expressed. He testified that he felt because of his bona fide assumption that the written lease had been abandoned, the subsequent owner would have no difficulty in terminating what he believed to be the tenancy from month to month of these defendants.
After the sale and its confirmation, and possession by the subsequent owner, Lepore instituted in the district court an action to dispossess Newman and Frank, the defendants. In the course of the trial, counsel for Newman and Frank presented the lease with a rider thereto attached showing a modification of the monthly rent from $125 to $75. Lepore says that was the first knowledge he had of the "rider," or that there had been a modification in writing of the monthly rental, and that the lease was "alive." Thereupon, the district court proceedings were dismissed; and this suit was instituted.
Ross, Monroe's grantee, conveyed the premises to the complainant Mesiavech, a purchaser for value. There is evidence that the property is worth no more than the mortgage debt, including the taxes paid.
When the lease was executed the first mortgage was in default. In Boteler v. Leber, 112 N.J. Eq. 441, Vice-Chancellor Berry enunciated the rule that in this state a mortgage creates an immediate estate in fee in the mortgagee subject to defeasance by redemption, with a postponement of possession until default, and held that after a default the tenant cannot defeat the mortgagee's rights by an agreement with the mortgagor. The pronouncement in that case applies with all its force to the facts in the instant case. In Fletcher v. McKeon, 71 N.Y. App.Div., S.C., 75 N.Y. Supp. 817, the court said:
"The owner of the equity of redemption could not defeat the right of the mortgagee by a lease of the premises, and secure payment of rent in advance. To hold that such right existed would open the door for successful fraud in every case of rent-productive mortgaged premises, where the *Page 195 
security is inadequate for the payment of the mortgage debt. All that would be necessary to secure rents from the time of default until there could be a sale under a decree of foreclosure and the production of a deed by the purchaser, would be for the owner of the equity of redemption to execute a lease, receiving rent in advance. During such period the earning power of the property would be at the mercy of such owners, even though it was utterly inadequate to pay the mortgage debt. And when we consider the obstacles which may be thrown in the way of the foreclosure of an honest mortgage, it is easily seen that fraud might arise out of such a condition which would be intolerable. It is sufficient now to say that, by the application of plain, equitable principles, no such result is permissible, and no such condition will be tolerated."
To the same effect is Olive v. Levy, 201 N.Y. App. D. 262;S.C., 194 N.Y. Supp. 88; Sager v. Rebdor Realty Co.,230 N.Y. App. D. 106; S.C., 243 N.Y. Supp. 314.
As indicated, the lease was made October 1st, 1932; its terms were five years, and the payment of monthly rent in the sum of $125. In November, 1933, the mortgage was in default; interest was in default; taxes were in arrears. In the face of this situation, on December 1st, 1935, a deduction in the rent of approximately forty per cent. was made for the balance of the term of the lease. A rider denoting the deduction of rental appears to have been attached to but one copy of the lease — that one copy being in the possession of the defendants. Newman's testimony that he exhibited the lease with the attached rider to Lepore on August 7th, 1934, does not ring true to me. If such were the case, it does not seem quite clear why Lepore, a competent lawyer, allegedly having knowledge of the lease and the attached rider, with the presumed knowledge that the alleged amended lease would substantially affect the title to the premises, if it were not "cut-off," would proceed with the foreclosure suit without taking appropriate action to have these defendants joined as parties defendants to the original foreclosure proceedings. It does not seem reasonable to think that an intelligent and experienced lawyer would ignore such a situation with its *Page 196 
resulting effect. The fact that Lepore instituted in the district court the dispossess proceedings against the defendants shows his good faith and his belief in the soundness of his position. It is quite evident that he either miscalculated, or was mistaken in his conclusions.
In Hinners v. Birkevaag, 113 N.J. Eq. 413, Vice-Chancellor Fielder, among other things, said: "This suit would have been unnecessary had complainant's solicitors in foreclosure not made a mistake."
I am satisfied that Lepore's attitude in the original foreclosure proceedings was based upon pure and wholesome motives, and under the circumstances, not to afford relief as prayed for, would, in effect, be to impose an unfair penalty. In the Hinners Case, supra, Vice-Chancellor Fielder further said:
"Of course complainant and his solicitors had constructive notice of defendants' rights through the record of Skinner's deed to defendants and complainant may have actually known that defendants were using the right of way as means of access to their property, but I cannot hold on the evidence that complainant had actual notice of the extent of defendants' rights."
The premises, I am convinced, are worth no more than the amount of the complainant's mortgage and the liens that were against it. Vice-Chancellor Backes, in Shepard v. Barrett, 84 N.J. Eq. 408,
said:
"The amount due to the complainant was agreed upon by counsel in open court. That the land is worth no more than the amount of the complainant's mortgage is not denied. The complainant offers to make a grant of her legal title and to surrender possession upon payment of the amount due upon her mortgage. I will advise a decree that the defendant redeem within thirty days, or be foreclosed."
I shall advise a decree that the defendants redeem within thirty days of the date hereof, or that they be foreclosed in accordance with the prayer of the complaint. *Page 197