On July 5th, 1932, Rose Harris was appointed rent receiver in a foreclosure suit. The Hamilton Trust Company was the owner of the premises at the time, having acquired them through previous foreclosure proceedings, and was not on the bond of the mortgage now in suit, and had not assumed such mortgage. At the time of the appointment of the rent receiver, there were four tenants in the building from whom the Hamilton Trust Company collected rents just prior to the appointment of the rent receiver.
The present application is to compel the trust company to turn over these rents last collected, to the rent receiver. It is now conceded on behalf of the rent receiver that she has no claim as to the rents of three of the tenants, so that the matter now before the court is restricted to the right as between the receiver and the trust company to rent collected from Hutmacher Braiding Company, the fourth tenant.
The Hutmacher Company for some time had had a lease at a rental of $387.50 per month payable in advance on the first day of each month. The present foreclosure suit was instituted in the end of July, 1932, at which time interest was in default on complainant's mortgage, and taxes on the premises were in default for the year of 1931 and part of the year 1932. The premises have been sold in the foreclosure suit for less than the mortgage.
The trust company had knowledge for several months before the filing of the foreclosure action that it was imminent. Under these circumstances, on July 16th, 1932, the trust company canceled the lease of Hutmacher Braiding Company and on the same day entered into a new lease at the same annual rental, but providing for payment each three months in advance beginning July 1st, 1932, instead of the prior arrangement for payments monthly. On or before the 1st day of July, 1932, the tenant paid the trust company the rent for the three months in advance beginning July 1st, 1932. *Page 489 
It is conceded that the rent receiver has no claim for one-third of this payment, being the equivalent of the rent for the month of July since, in any event, it became payable before the receiver was appointed; but it is contended on the part of the receiver that under the circumstances the trust company had no right to take the rent for the months of August and September, and that she is accordingly entitled to payment thereof from the trust company.
There seems to be no precedent in this state exactly in point, but from the decisions of somewhat analagous cases, the equitable principles become apparent. Until default of the mortgage, the owner of the equity of redemption has full dominion over the premises, but after default, giving the mortgagee the right to possession, the owner of the equity of redemption does not have the right to so deal with a tenant as to decrease the value of the mortgaged premises. It is the usual rule that even after a default, the mortgagor is entitled to rents accruing before the date of the appointment of a rent receiver, even though not paid at the time of the appointment of the receiver. New OrderBuilding and Loan Association v. 222 Chancellor Ave., Inc.,106 N.J. Eq. 1. The receiver is entitled to rents accruing after his appointment even though paid in advance by the tenant, if the mortgage was in default at the time of the payment. Boteler v.Leber, 112 N.J. Eq. 441. The equitable principles which apply to agreements between owner and tenants as affecting the rights of mortgagees were discussed in Mesiavech v. Newman, 120 N.J. Eq. 192.
The court says (at p. 194):
"When the lease was executed the first mortgage was in default. In Boteler v. Leber, 112 N.J. Eq. 441, Vice-Chancellor Berry enunciated the rule that in this state a mortgage creates an immediate estate in fee in the mortgagee subject to defeasance by redemption, with a postponement of possession until default, and held that after a default the tenant cannot defeat the mortgagee's rights by an agreement with the mortgagor. The pronouncement in that case applies with all its force to the facts in the instant case. In Fletcher v. McKeon, 71 N.Y. App.Div.; S.C., 75 N.Y. Supp. 817, the court said: *Page 490 
"`The owner of the equity of redemption could not defeat the right of the mortgagee by a lease of the premises, and secure payment of rent in advance. To hold that such right existed would open the door for successful fraud in every case of rent-productive mortgaged premises, where the security is inadequate for the payment of the mortgage debt. All that would be necessary to secure rents from the time of default until there could be a sale under a decree of foreclosure and the production of a deed by the purchaser, would be for the owner of the equity of redemption to execute a lease, receiving rent in advance. During such period the earning power of the property would be at the mercy of such owners, even though it was utterly inadequate to pay the mortgage debt. And when we consider the obstacles which may be thrown in the way of the foreclosure of an honest mortgage, it is easily seen that fraud might arise out of such a condition which would be intolerable. It is sufficient now to say that, by the application of plain, equitable principles, no such result is permissible, and no such condition will be tolerated.'
"To the same effect is Olive v. Levy, 201 A.D. 262; S.C.,194 N.Y. Supp. 88; Sager v. Rebdor Realty Co., 230 A.D. 106;S.C., 243 N.Y. Supp. 314."
In the instant matter, owner after default with knowledge that a foreclosure suit was imminent, and a very short time before the appointment of the rent receiver, executed a new lease at the same rental as before but providing for payment in advance every three months instead of every month. The effect of upholding this transaction would be to destroy the earning power of the premises for a period of two months subsequent to the receivership and to give the benefit of this earning power to the owner at the expense of the mortgagee. This seems to be a violation of the duty of the owner in default to conserve and not to decrease the security.
An order will be advised directing the trust company to pay to the receiver the sum of $775 received from the Hutmacher Braiding Company for the months of August and September, 1932. *Page 491