Joseph A. Boccia, J.
These summary proceedings were instituted by a receiver appointed by the New York County Supreme *1089 Court in a foreclosure action to evict each of the tenants by reason of nonpayment of rent for the respective premises occupied by each of them.
For the purpose of trial the proceedings were consolidated. The tenants resist these summary proceedings claiming that the rent was paid.
The basis of the tenants’ answer is to the effect that one Ray Robinson, connected with each of the tenants, advanced and loaned money to the owner of the premises, R. G-. S. Realty Corp., which were to be deemed advances on account of the rent and that at the time the proceedings were instituted there was still due and owing by the R. G. S. Realty Corp. to the tenants herein sums of money which still remain unpaid.
Most of the material facts are not in dispute. It appears that the receiver appointed by order of the Supreme Court, New York County, on October 25, 1957 was empowered to receive and collect all rents from the mortgaged premises under foreclosure with leave and authority to prosecute suit for the collection of such rents then due or to thereafter become due.
It appears without contradiction, that Ray Robinson is the president of R. G. S. Realty Corp., the owner of the premises involved herein. It likewise appears that each of the tenants are controlled by the said Robinson in one form or another. None of the tenants took the stand to testify in support of the defense set up by each of them. The only witness who testified upon the trial was the accountant for the owner of the premises, R. G. S. Realty Corp., who endeavored to prove that based upon the records of the owning corporation, it was indebted to Ray Robinson for certain moneys and that the tenants involved in these proceedings had been credited with payment of rent for the period of time for which each of the proceeding's had been instituted.
The landlord on the other hand asserts that the agreement between the tenants and the landlord, if any there be, is fraudulent and collusive and that such agreement even if proved, was in direct contradition to the terms of the mortgage being foreclosed which specifically provides that R. G. S. Realty Corp. was not to collect any advance rents from any tenant or occupant of the mortgaged premises except for the current month; further that any such rent paid to the owning corporation would not be binding as against the mortgagee or any receiver which may be appointed of the mortgaged premises and upon a violation of these provisions the entire balance remaining unpaid would immediately become due and payable.
*1090 The mortgage containing these pro visions-is dated December 1, 1955 and is signed by Ray Robinson, as president of the owning corporation and appears to have been recorded in the City Register’s office.
The primary question submitted to this court for determination is: can a tenant offset against a receiver of property under foreclosure a claim it has against the owner of the premises for moneys loaned to the owner?
No testimony was adduced by the tenants to indicate the nature of their tenancies. It would thus appear that the moneys claimed to have been loaned by the tenants to the owning corporation were made over a period of time, the exact particulars, of which were not presented to this court except by the tenants ’ answer where each tenant alleged that prior to October 25, 1957 the tenants acting through its president, Ray Robinson, had loaned to the landlord the sum of $7,250 and on or about July 16, 1957 the tenant acting through the same individual had loaned to the landlord an additional sum of $2,000. Clearly these loans postdated the mortgage which is presently being foreclosed in the Supreme Court. Thus, this court concludes that the tenants had constructive notice of the terms of the mortgage entered into between the owning corporation and the mortgage which was a matter of record. (Matter of East River Sav. Bank [Morsyl Realty Corp.], 294 N. Y. 356.)
The fact that the tenants sought to introduce testimony through the medium of the owning corporation’s accountant indicating that the books and records of the owning corporation purported to show that the rents for the various tenants had been paid up to September, 1958 is to the court’s mind, of no avail. This, notwithstanding the fact that no proof of any fraud or collusion was offered by the receiver although the receiver attempts to point up such fraud by virtue of various circumstances appearing from the chronological dates and connection of Robinson with the owning corporation and each of the various tenants.
Up to the determination in 1932 by the Court of Appeals in Prudence Co. v. 160 West 73rd St. Corp. (260 N. Y. 205) the rule as set forth in Fletcher v. McKeon (71 App. Div. 278) was to the effect that a receiver of rents and profits of mortgaged premises was not bound by any agreement between the mortgagor landlord and the tenant whereby the tenant paid rent in advance; and notwithstanding any such agreement the mortgagee or the receiver could still collect rent that accrued under the terms of any leasing agreement. In Prudence Co. (supra, *1091 p. 211) the Court of Appeals distinguished the earlier Appellate Division cases, and used the following language: ‘ ‘ Though, during the pendency of the action, a court of equity has power to issue interlocutory orders for the protection of an asserted lien, such orders must be auxiliary to the right to foreclose the lien, and cannot deprive any party of a title or a right, which though subordinate to the lien of the mortgage, survive and are valid until the lien is foreclosed by a sale under a judgment of foreclosure
However, the court did take pains to indicate at page 213 that: ‘ ‘ What we have said must not be accepted as an indication that an order appointing a receiver of rents and profit^ may be frustrated by a collusive and fraudulent lease for an inadequate rental or advance payment of rent in anticipation of a foreclosure action. ’ ’
In Bank of Manhattan Trust Co. v. 571 Park Ave. Corp. (263 N. Y. 57, 62) decided a year after the Prudence case, the court, per Crouch, J., stated the proposition pertaining to facts somewhat similar to the one at bar in the following language: ‘1 The rent instead of being paid in cash was paid by being offset against the interest otherwise payable on the debt, and against the other benefits received by the mortgagor under the agreement. But the right thus to offset ceased when the appointment of a receiver required the application of rents to the mortgage debt. They were covered by the assignment clause in the mortgage, and were part of the security to which the mortgagee by means of a receivership was entitled to resort. No valid grant of rents could be made by the mortgagor beyond default and the appointment of a receiver, for they were no longer its to grant.” And continuing further and distinguishing the Prudence case, the court held: that it was not necessary to establish fraud between the owner and tenant and used this language in making such distinction (pp. 62-63):
“We did not hold that the mortgagor’s agreements with respect to mortgaged premises were conclusive upon the mortgagee where they are in contravention of express covenants or the necessary implications of a prior recorded mortgage. A contract by the mortgagor or its successors surrendering the right to receive rent for the mortgaged premises, or assigning, in whatever manner, the rents collectible from those premises, is unquestionably an impairment of the lien of the mortgage upon the rents. It is not necessary to find any collusion in making such an arrangement; it was simply beyond the power of the parties either to appropriate the pledged rents to a dif *1092 ferent indebtedness, or-to defeat the pledge by granting the use of the premises rent free.
“This was not only expressly forbidden by the mortgage, but it seems a necessary consequence of the assignment of rents contained in it. These rents were expressly made security for the mortgage indebtedness in the event of default, and the scope of the contracts the mortgagor or its successors might make was necessarily limited to that extent. The pledge of these rents could not subsequently be rendered worthless either by another assignment of rents to be received, or by contracting away the right to collect any rent.”
To the same effect see Colter Realty v. Primer Realty Corp. (262 App. Div. 77, 79-80). There, the court, speaking through Callahan, J., held as follows; in discussing the effect of the Prudence case as applied to the facts in the Bank of Manhattan Trust Co., case (supra): “ The court held that where a mortgagor’s agreement is made surrendering the right to receive rent for the mortgaged premises, or for the assignment of rents collectible therefrom, it was an impairment of the lien of the mortgage upon the rent. The court also held that it was not necessary to find collusion in the making of such an arrangement ; that it was beyond the power of the parties to appropriate the pledged rents to a different indebtedness, or defeat the pledge by leasing the premises rent free. "Where the rents are expressly made security for the mortgage indebtdness in the event of default, the scope of the contract which the mortgagor or its successor might make is necessarily limited to that extent, and a pledge of the rents cannot be rendered worthless by an assignment of rents to be received, or by a contract doing away with the right to collect rent.”
Based upon these principles and applying them to the facts at bar, it follows that the receiver is entitled to a final order against the tenants for the relief demanded in the receiver’s petition and a final order will issue accordingly.
Five days’ stay of execution.