## SANDERSON v. PRICE.

The tenant of a mortgagor holding by lease made subsequent to the mortgage, from whom the mortgagee has recovered possession of the premises upon default in ejectment, is not liable to mortgagee in an action of mesne profits taken for value after service of declaration in ejectment, but only from actual entry by mortgagee.—(a)

Error to the Supreme Court.

This was an action of trespass for mesne profits, brought by Edward Price deceased, the plaintiff's testator, tried before the Chief Justice at the Essex Circuit, October, 1843. The testator recovered in an action of ejectment the premises in question, of David Sanderson, the defendant.

The premises were mortgaged by one John H. Smith, a former owner, to the said Edward Price, on the 1st March, 1836, to secure a debt of $16,000. Smith conveyed the premises to one Elias Corriell, by deed dated 27th March, 1837; and Elias Corriell conveyed the same to Anna Corriell, by deed dated 24th May, 1837. Sanderson was a tenant from year to year under a demise by Smith, subsequent to the date of the mortgage. The mortgagee filed a bill for foreclosure, and also served a declaration of ejectment upon Sanderson, the defendant in possession. The declaration of ejectment was served on Sanderson on the 23d August, 1838. A decree of foreclosure and sale was had in the Court of Chancery, in pursuance of which the mortgaged premises were sold by the Sheriff of Essex, Price, the mortgagee, becoming the purchaser. The Sheriff conveyed the premises to Price, by deed dated 5th March, 1839. After this conveyance, and shortly before Price obtained judgment in the action of ejectment, to wit, on the 20th March, 1839, Sanderson surrendered the possession of the premises.

(a) Four members (against six) dissented; holding that the tenant was liable in such action after entry for the profits from the time of notice by the mortgagee. And in the absence of other notice, from the time of the service of the declaration in ejectment.

This action for the mesne profits was then brought against Sanderson, by Price, the mortgagee.

The defendant in the progress of the trial offered to prove that permanent improvements, to the value of three thousand dollars, were made, upon the premises in question by John H. Smith, the mortgagor, between 1st April 1836, and 1st March 1839. The plaintiff, by his counsel, objected to the defendants giving any evidence of such improvements prior to November, 1836. The court sustained the objection, and defendant prayed a bill of exceptions.

The defendant's counsel called upon the court to charge the jury.

1. That a mortgagee cannot maintain an action for mesne profits against the mortgagor, or a tenant holding under him subsequent to the mortgage, until after the mortgagee gets the actual possession.

2. That a mortgagee cannot maintain an action against the tenant of the mortgagor, unless he gives notice to the tenant that he claims the rent by virtue of the said mortgage.

3. That if the jury were satisfied that Sanderson, the defendant, paid the rent to the mortgagor, or his assigns, up to the time Price obtained the possession by due course of law, they ought to find for the defendant.

The court refused to charge as requested, but charged the jury, that as between a mortgagee and the tenant of the mortgagor, the service of a declaration in ejectment is such a notice to the tenant, that the mortgagee claims the immediate right of possession, and consequently a right to have the rents and profits, that if the tenant afterward pay rent to the mortgagor or his assigns, he pays it in his own wrong, and he must respond over again to the mortgagee.

That the commencement of an action of ejectment is equivalent to an entry upon the land, for a right of entry is essential to the commencement of such an action, and if the actual tenant resists such entry and prevents the plaintiff from taking the rents and profits, he becomes a trespasser from that time, and ought to respond in damages for the rents and profits.

That the plaintiff was entitled to recover for the rents and

profits from 23d August, 1838, when the declaration was served, to 20th March, 1839, when the possession was given up to the plaintiff, together with the costs of ejectment.

A bill of exceptions was taken to the opinion of the court, and judgment having been rendered in the Supreme Court, the cause was removed into this court by writ of error

The cause was argued at the July Term last, by *I. W. Scudder*, and *B. Williamson*, for the plaintiff in error; and by *F. B. Chetwood*, and *P. D. Vroom*, for defendants, before all the Judges, except the CHIEF JUSTICE and Judge ROBERTSON.

*I. W. Scudder*, and *B. Williamson*, for plaintiff in error.

This is an action against a tenant whose lease was subsequent to the mortgage, in which treating him as a trespasser, it is sought to recover from him the mesne profits, prior to the time the plaintiff obtained the actual possession of the premises. Is such tenant a trespasser? If so, then also mortgagor. The mortgagor cannot be treated by the mortgagee as a trespasser, nor can his assignee, until the mortgagee has regularly recovered possession by writ of entry or ejectment; because, being in possession, he is considered to be in by the mortgagee's assent. 4 *Kent*, 155, 157.

The mortgagee has but a lien, and the freehold is in the mortgagor, who may even maintain trespass or ejectment against the former. *Runyan* v. *Mersereau*, 11 *John*. 534; *Jackson* v. *Bronson*, 19 *Ib*. 325; *Dickenson* v. *Jackson*, 6 *Cow*. 147.

The wife of the mortgagor is entitled to dower. *Hitchcock* v. *Harrington*, 6 *John*. 290; *Coles* v. *Coles*, 15 *Ib*. 320.

As the mortgagor has but a lien for the security of his money, at the present day in New Jersey, he cannot recover possession by ejectment till the day of payment is past, and the condition has been broken. So decided in this court in this very cause.

The existence of a mortgage is no breach of a covenant of seisin. *Sedgwick* v. *Hollenback*, 7 *John*. 376.

A mortgagee cannot maintain an action for nuisance, nor recover damages but from the time he takes actual possession of the mortgaged premises. *Hatch* v. *Dwight*, 17 *Mass*. 289 (299).

His interest cannot be sold on execution before foreclosure. *Jackson* v. *Willard*, 4 *John.* 41.

A mortgagor can make a valid lease, and can maintain an action for all the rent accruing before eviction. *The Fitchburg Man. Co.* v. *Melvin*, 15 *Mass.* 248 ; *Gibson* v. *Farley*, 16 *Ib.* 280.

In equity, until foreclosure, the mortgage is a mere security, and the mortgagor cannot be made to account for the profits. *Price* v. *Smith et al.*, 1 *Green's Ch. R.* 518. The right, then, of the mortgagee to the profits commences only from the time of taking possession of the estate in the mode prescribed by law. When he pleases he may enforce his remedy against the land ; but until he does so it remains a dead pledge.

. No authority can be produced to support this action, and *Wilder* v. *Houghton* (1 *Pick.* 87) seems a direct authority to the contrary. See *Mayor* v. *Fletcher*, 14 *Pick.* 525 ; *Keech* v. *Hall*, *Doug.* 21 ; *Moss* v. *Gallimore*, *Ib.* 282 ; *Mead* v. *Ld. Orrery*, 3 *Atk.* 235 ; 4 *Kent.* 155 ; *Evans* v. *Elliott*, 9 *Ad. & Ell.* 342 (36 *E. C. L.* 159).

Tenant stands in the same situation as mortgagee. *Doug.* 21 ; 3 *East.* 449 ; 7 *Halst.* 322.

If the action can be maintained at all, must there not be notice that the plaintiff claims by virtue of his mortgage ? The doctrine is yet to be established that the service of a declaration in ejectment is equivalent to an .entry. The case is given up in principle, by the admission, that the recovery of the mesne profits is to be restricted to the time of the service of the declaration.

The action is an equitable action, and proof should have been permitted of payment of rent before notice. Possession of the lease was evidence of the payment. of rent. If proof was permitted, still it was overruled by the charge.

The value of the improvements should have been allowed. *Maurice* v. *Semple*, *Addison* 215 ; *Jackson* v. *Loomis*, 4 *Cow.* 168 ; *Murray* v. *Governeur*, 2 *John. Cas.* 440 ; *Hylton* v. *Brown*, 2 *Wash. C. C. R.* 165.

*F. B. Chetwood*, and *P. D. Vroom*, for defendants in error.

The action of trespass for mesne profits is founded on well settled principles. It follows a recovery in ejectment, and after re-entry, by the doctrine of relation, the lessor or owner will be entitled to recover damages for trespasses committed to his land while he was out of possession; since by re-entry his possession is revested *ab initio*. As a general rule, he is entitled to recover the mesne profits from the date of the demise. It is not necessary to dispute the doctrine that the mortgagor in possession is considered in equity as the owner. In regard to third persons, he is treated by the courts as having the freehold. But as between him and the mortgagee, at any rate, after forfeiture, the mortgagee is the owner, may treat him as a trespasser, and may remove him by ejectment. The action of ejectment proceeds upon the ground of trespass, and may be maintained without notice against the mortgagor and all others claiming under him subsequent to the mortgage. A tenant, subsequent to the mortgage, has no privity with the mortgagee, may be treated as a trespasser, and removed by ejectment. True, he may attorn the mortgagee by his consent, and thereby become his tenant. *Sanders* v. *Van Sickle*, 3 *Halst.* 313, has been reversed on error, on the ground denied in that case—that by such attornment he may become the tenant of the mortgagee; and such attornment and payment of rent will be a good defence to an action brought by the mortgagor. But if he refuse to attorn, or if the mortgagee do not agree to accept him as a tenant he may at once be treated as a trespasser, and without notice, ejectment may be maintained against him. But the ejectment proceeds upon a right of entry and a right to the enjoyment of the rents and profits. When the tenant chooses to hold over and deprive the mortgagee of those profits, why shall he not be held liable therefor? He is not liable as tenant, nor till entry, but if he resists such entry, certainly from that time he becomes a trespasser, and ought to respond in damages. He cannot be made to account therefor, for there is no privity of contract or estate; but for that very reason he may be dispossessed by ejectment, and the landlord will then " thereby entitle himself to the rents and profits at law." *Price* v. *Smith et al.* 1 *Green's Ch. R.* 516 (520).

The doctrine cited from *Atkins* and other books that the mortgagor, his lessee or assigns, cannot be held to account for the rents and profits, is entirely consistent, indeed identical with that held by the Chancellor of this state in the case last referred to. The language used by Chancellor *Kent*, (4 *Com.* 155) that the mortgagee or his lessee cannot be treated as a trespasser until a recovery in ejectment, must undoubtedly be understood in reference to the subject matter and the connection : for the very bringing an action of ejectment is treating them as trespassers.

The doctrine in Massachusetts is peculiar, and rests upon the statute and local law of that state. The case of *Houghton* v. *Wilder*, 1 *Pick.* 87, the only case in point cited on the opposite side, appears to have been rightly decided, upon their peculiar law, but it is no guide for us. Peaceable entry and possession for three years, in that state amounts to foreclosure. An action at law must be brought to settle the sum due, and it is not until sixty days after judgment, without payment, that any right of possession is vested in the mortgagee. See *Laws of Mass. p.* 134; 1 *Pick. R.* 89.

But it is said that the tenant cannot be treated as a trespasser until possession is recovered by the mortgagee. If treated as a trespasser, must it not be for some period prior to his amotion ? Can he be a trespasser in regard to time, when he is no longer in possession ? How can ejectment be maintained if not a trespasser while in possession, and when that action was brought ?

But it is said if liable, it must be from the time of the *ouster* laid in the declaration, which would be manifestly unjust and oppressive. The inconvenience is avoided by treating this action as an equitable action, and permitting the defendant to shew the holding under a mortgagor in possession as an equitable defence, up to that period when the mortgagee chose to assert his legal rights. Such defence is admissible upon the same principles as in the case of permanent improvements made in good faith, proof of which has been allowed to go to the jury in this action, in mitigation of damages.

As to the dictum that a lessee or assignee stands in the same place as a mortgagee, it is not entirely correct. There is privity in the one case, and not in the other. The mortgagor is

*quo modo* tenant at will, until the mortgagee by entry changes that relation; but the lessee, or other person who comes in under the mortgagor, is an entire stranger to the mortgagee. Notice will not make the subsequent tenant, tenant of the mortgagee; attornment at least is necessary: mortgagee may always treat him as trespasser. *Evans* v. *Elliot,* 9 *Adol. & Ellis,* 342.

If made an *actual* trespasser from the time legal demand of possession by the service of a declaration in ejectment, from that time the tenant ought to respond in damages for the profits which he detains from the plaintiff.

In regard to proof of payment of rent, the defendant was permitted to make proof of any payment made prior to the service of the declaration of ejectment.

As to the improvements made by Smith, Sanderson had no equitable right to *recoupe* for those improvements, and the evidence was properly rejected.

The court reversed the judgment of the Supreme Court by the following vote: (a)

*For Reversal*—The CHANCELLOR, NEVIUS, PORTER, SPENCER, SCHENCK, and SINNICKSON—6.

*For Affirmance*—WHITEHEAD, CARPENTER, RANDOLPH, and SPEER—4.

CARPENTER, J. (with whom WHITEHEAD, RANDOLPH, and SPEER concurred), delivered the following dissenting opinion:

The judge at the trial refused to permit the defendant to prove improvements made, not by Sanderson the tenant, but by Smith the mortgagor, under whom Sanderson had gone into possession. In this he was clearly right. Lasting improvements made in good faith by the defendant, have been allowed him in this action, against the rents and profits claimed by the plaintiff. 2 *Greenl. Ev.* § 337. But it is difficult to see on

(a) The Chief Justice who tried the cause at the Circuit did not sit. Judge ROBERTSON was absent.

what equitable ground the defendant can claim to be allowed in mitigation of damages, for improvements made, not by himself, but by another.

The real question in this cause is, whether the action of trespass for mesne profits lies against a lessee of the mortgagor, subsequent to the mortgage, after recovery in ejectment and entry by the mortgagee. In my opinion the action will lie.

In Vermont it has been so expressly decided. It has been there held, that the mortgagee is entitled to recover the rents and profits against the assignee of the mortgagor from the time of notice to quit by the plaintiff, or in the absence of such notice from the commencement of the action of ejectment. *Babcock* v. *Kennedy*, 1 *Verm. Rep.* 457 ; *Lyman* v. *Mower*, 6 *Ib.* 345. In *Wilder* v. *Houghton*, 1 *Pick.* 87, it was held otherwise. As remarked by counsel on the argument, whatever may be the true doctrine of the common law, the case last cited was probably decided rightly upon the local and peculiar law of Massachusetts in relation to mortgages. Standing upon their peculiar law of mortgage, it was entirely unnecessary for the court in that instance to appeal to foreign authority to sustain its judgment, and in which appeal, as it seems to me, the court fell into error as to the effect of the authorities cited by them. Undoubtedly the mortgagor or his assignee in possession cannot be called upon to account for the rents and profits to the mortgagee and for the reason given in the cases cited : the party by his ejectment may dispossess the tenant, and thereby entitle himself to the rents and profits at law. There can be no decree to account for rents received by the mortgagee in his own right, though by the implied assent of the mortgagee. But upon the withholding of that assent, then the mortgagee is referred by courts of equity to his *legal remedies*.

I have not been able to find one English case, in which the point has been expressly decided. It seems, however, strongly implied in *Keech* v. *Hall*, *Doug.* 21, that the action will lie, and that case is cited for this point, in *Adams on Ejectment*, p. 384, (*N. Y. Ed.* 1840.) Lord Mansfield, in delivering the opinion of the court in *Keech* v. *Hall*, by which it was settled that a mortgagee might recover in ejectment against such tenant, with-

out giving him notice to quit, said: "It was said at the bar, that if the plaintiff, in a case like this, can recover, he will also be entitled to mesne profits from the tenant in an action of trespass, which would be a manifest hardship and injustice, as the tenant would then pay the rent twice. I give no opinion on that point; but there may be a distinction, for the mortgagor may be considered as receiving the rents in order to pay the interest, by an implied authority from the mortgagee, till he determine the will." In ejectment the tenant is treated as a trespasser. The action of ejectment is maintained against him upon the ground that at the time of the service of the declaration, if not before he was a trespasser. The consequence was seen and suggested by counsel, that he was liable to an action for the mesne profits, and in the remarks cited, this was impliedly admitted by the court. The active mind of Lord Mansfield at once suggested the true answer to the apparent hardship. In substance it is, that the mortgagee shall not be permitted to recover the profits by way of damages, for that period, during which he had, by permitting the mortgagor to remain in possession, given him an implied authority to receive the rents and profits. It is a complete answer to so much of the argument as refers to the supposed hardship towards the tenant. It appears to me to be in entire accordance with those equitable rules, some of which, since more clearly settled, now govern this action.

The recovery in ejectment is conclusive evidence of the lessors title from the time of the demise laid in the declaration: but of his right to recover the mesne profits of the *defendant* in ejectment, only from the time of the service of the declaration. *Aslin* v. *Parker*, 2 *Burr*. 668; *Dodwell* v. *Gibbs*, 2 *C. & P*. 615. But it seems sufficient to enable the plaintiff to recover some damages from the time of service of the declaration. If the plaintiff seek to recover mesne profits for an antecedent period he must give distinct evidence of the defendant's possession, or of whatever may be necessary to entitle him so to recover.

The tenant while in possession under the implied assent of the mortgagee and paying the rents and profits, under that implied assent, to the mortgagor, cannot during that period be held also responsible to the mortgagee. But if the mortgagee

chooses to enforce his rights he may at any time (at any rate after forfeiture) (a) enter, take the rents and profits, and eject the tenant. An eviction by the mortgagee, by title paramount to the subsequent lease, undoubtedly suspends the subsequently accruing rent and would be a defence to an action by the mortgagor for such rent. But it is not necessary for the tenant to wait for an ejection by form of law. The tenant, upon notice given, may acknowledge the title of the mortgagee, put him by attornment in constructive possession and pay him the rent; and such implied eviction, will be a defence to any demand by the mortgagor, for rent accruing subsequently. Note to *Moss* v. *Gallimore*, 1 *Smith's L. Cas.* (*Law L. Ed.* 1844,) p. 426. The case of *Souders* v. *Vansyckle*, 3 *Halst.* 313, is not in accordance with the doctrine of attornment just stated; but so far I apprehend, that case is not to be considered law, having been, as is well known, reversed in error on this very ground. There is, then, no hardship upon the tenant or assignee of the mortgagor. If he resists the entry of the mortgagee and prevents him from taking the rents and profits, he becomes from that time an actual trespasser, and ought to answer in damages therefor. Under the equitable rules which govern this action, and by which the remedy against the tenant is controlled, I apprehend the present action will not only lie, but is necessary for the security of the mortgagee.

In *Liford's case*, (11 *Co.* 51,) there is a dictum of Lord Coke, that the disseisee, after re-entry, cannot recover in an action for mesne profits against the feoffee, lessee, &c. of the disseisor; but that in such case the disseisee shall recover all the mesne profits against the first disseisor. The reasons given are, that this fiction of law that the freehold always continued in the disseisee, shall not have relation to make him, who comes in under title, a wrong doer *vi et armis*; and that it is to be presumed, that the lessee has given a recompense to the disseisor,

(a) Although clearly against the common law rule, and contrary to the rule previously held in this state, the Court of Errors decided, in a case between the present parties, (*Sanderson* v. *Den. dem. Price*, at May Term 1840,) that ejectment will not lie by the mortgagee against the mortgagor until after default made.

and therefore that the latter should be charged with the whole. The same law if the first disseisor is disseised, because otherwise the second disseisor would be twice charged. Mr. Coote, in his treatise on the Law of Mortgages, ( *p.* 345 *Law Lib. Ed.* 1837) says : that the lessee, coming in by title under the mortgagor in possession, *appears* to be within the rule, and consequently not liable to an action for mesne profits.

The rule, as stated, is by no means clearly established. Many of the authorities on both sides are collected in the American notes to *Moore* v. *Hussey, Hob.* 98 ; in which case the same rule is laid down *arguendo*, and the same reasons given. The authorities in the older books in conflict with this rule are numerous and respectable ; the rule was stated in *Liford's case* extrajudicially ; and Lord Coke himself says, that in his day, there was a great variety of opinions in the books. I think it will be found, that of a later date, the weight of authority is against the distinction. See *Com. Dig. "Trespass"* (*B.* 2 ;) *Holcomb* v. *Rawlings, Moore* 461 ; *S. C. Cro. Eliz.* 540 ; *B. N. P.* 87 ; *Emerson* v. *Thompson,* 2 *Pick.* 473 ; *Washington, J. in Green* v. *Biddle,* 8 *Wheat.* 75 ; *Morgan* v. *Varick,* 8 *Wend.* 587.

The rule was discussed, although not settled, by Chief Justice Ewing, in *Bacon* v. *Sheppard,* 6 *Halst.* 197. The decision in that case was based on the doctrine of *Menvil's case,* which, indeed, seems to be only a more narrow and reasonable application of the same rule. In the rule already adverted to, it will be observed, that the first or actual possession, prior to the period of possession by relation, was disturbed by act *in pais,* or disseisin without color of law or legal procedure. In *Bacon* v. *Sheppard,* the disturbance of the plaintiff was under a legal proceeding by writ of *Hab. fa. possessionem,* sued out on judgment by default in ejectment ; but the judgment and execution being afterwards set aside, he was restored to possession by writ of restitution. It was resolved, in *Menvil's case* (13 *Co.* 21,) that when possession of land is obtained under an erroneous judgment, and, the judgment being set aside, the original possessor is restored ; he who is thus restored, may maintain an action of trespass against him who obtained possession under the erroneous judgment, and in such action shall recover all the

mesne profits by whomsoever taken, and for intermediate injuries by whomsoever done : but he shall not have an action of trespass against a stranger, or for an intermediate trespass on him in actual possession ; and he who had the intermediate possession under the judgment may, even after restitution, recover in trespass for an injury while he was in the actual possession ; and upon this principle, that he is answerable for the mesne profits and intermediate injuries to him who was thus dispossessed and restored.   This principle was applied in *Bacon* v. *Sheppard*, especially for the protection of one who came in by title under the party who obtained an erroneous judgment; and· who being possessed by process of law, might justly be presumed by strangers to be rightfully possessed, while the judgment and possession under it continued in force.

So in *Case* v. *DeGoes*, 3 *Caines* 261, cited by Chief Justice Ewing, in which case the person in possession had the possession *lawfully*.   Beyond this the rule cited from *Liford's case*, has been expressly repudiated in the state of New York.   In *Morgan* v. *Varick*, 8 *Wend.* 587, the point being directly before the court, Chief Justice Savage, who delivered the opinion, said, that in all the prior cases before that court, in which the expressions of the judges indicated an approval of the rule, the opinion was uncalled for.   " If it be law," said he, " any irresponsible person may turn the owner forcibly out of the possession of his real estate, sell the buildings and the timber, and thereby destroy the value of the property; he may sell it, too, under ever so suspicious circumstances, for less than one-quarter of its value, and according to the doctrine quoted, the purchaser is safe, and the owner has no remedy but against the trespasser only.   Fortunately for the owners of real estate, such is not. now the law, whatever it may have been in the time of Lord Coke."   The principle involved in *Case* v. *DeGoes*, was left untouched : but it was held, that the remedy of trespass for mesne profits extended, as well against a stranger acquiring title from the disseisor, as against the disseisor himself.

It will be difficult to reconcile the rule, as applied by Mr. Coote, with the unquestioned course of decision and practice in the courts both of England and this country at the present

day. The action of trespass for mesne profits may be brought either against the person who was a defendant in ejectment, or who was the tenant in possession at the time of the ejectment brought, or against a former occupier. Any person found in possession after a recovery in ejectment, is liable to an action, and it is no defence to say that he was upon the premises as the agent and under the license of the defendant in ejectment. 2 *Roscoe, on Real Actions*, 706 (*Law Lib.*) When during the pending of an action of ejectment, the defendant gives up the possession to a third person ; after judgment in ejectment such third person is liable for the mesne profits. *Doe* v. *Whitcomb*, 8 *Bing.* 46 ; *Jackson* v. *Stone*, 13 *John.* 448. The plaintiff recovers against each occupant for the time he has been in possession. It is doubtful if ejectment can be brought against the tenant for the holding over of a sub-tenant. The landlord, apart from any sanction or collusion on the part of the principal tenant, must look to the sub-tenant, so holding over, for the mesne profits ; for the defendant, in an action of mesne profits, must be the person in actual possession and trespassing. *Burne* v. *Richardson*, 4 *Taunt.* 720 ; See *Adams' Eject.* 383. These cases appear to be in conflict with the rule to the extent claimed ; and the rule must be carried to a dangerous extent, if the action can be denied upon the grounds stated by Mr. Coote.

It may be said, that in the case of a sub-tenant just stated, though he comes in by title under the tenant, yet that when he holds over, he becomes an actual trespasser, *the disseisor* himself, and therefore answerable in damages. As I take it, it is the very case of the lessee of the mortgagor. While he holds under the mortgagor with the implied assent of the mortgagee, he incurs no responsibility to the latter. But if the mortgagee has done nothing to impair his rights, at his option, at any time, he may call upon the tenant to yield up the mortgaged premises. The mortgagor, while in possession, is *sub modo* a tenant at will, and liable to be dispossessed without notice ; and his lessee, in this respect, has no greater rights than the mortgagor under whom he holds. When therefore the lessee, after notice or on service of a declaration in ejectment, refuses to surrender the mortgaged premises, to the mortgagee, who has thus deter-

mined the will, from that time he becomes an actual trespasser. Until then his possession was not adverse, and therefore not within the rule in *Liford's* case at all.   But when he refuses to surrender the premises to the mortgagee, then his possession becomes adverse; he becomes an actual trespasser, the disseisor, in the same manner as the sub-tenant who holds over after the determination of the tenancy : but in like manner he can only be answerable in trespass for the mesne profits after an actual entry by the plaintiff.   Holding over against right, and taking the profits, he should answer therefor ; not by way of account, for it is well settled that he cannot be held liable in that mode, (*Price* v. *Smith,* 1 *Goun. Ch. R.* 517 ; 3 *Atk.* 244 ; 2 *Ib.* 107 ; 4 *Kent* 164 ;) but as a trespasser in an action for the mesne profits.

I apprehend then, that supposing the rule in *Liford's* case to be undisturbed, properly understood it does not stand in the way of the recovery in the present action.   The lessee of the mortgagor is himself the disseisor ; he holds under no prior disseisor, and does not come within the terms of the rule.   It is a point of view, which when considered, perhaps rendered it unnecessary to discuss the soundness of the rule at all.

It only remains to add, that I hold the Chief Justice rightly charged the jury when he said : " that the commencement of an action of ejectment is equivalent to an entry upon the land, for a right of entry is essential to the commencement of such an action ; and if the actual tenant resists such entry, and prevents the plaintiff from taking the rents and profits, he becomes a trespasser from that time, and ought to respond in damages for the rents and profits."   But I hold further, that for this purpose, not only a service of a declaration in ejectment is equivalent to an entry, but that notice to the tenant by the mortgagee and a demand of possession is equivalent to an entry ; and the tenant, if he hold over after such notice, will be an actual trespasser, and after actual entry responsible in damages.   See *Danforth* v. *Sergeant,* 14 *Mass.* 491.

I am of the opinion that the judgment of the Supreme Court ought to be affirmed.                    Judgment reversed.

CITED *in Shreve* v. *Miller,* 5 *Dutch.* 252; *Best* v. *Schermier,* 2 *Hal. Ch.* 155.