85 N.J. 617 (1981)
428 A.2d 1289
GUTTENBERG SAVINGS AND LOAN ASSOCIATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EMILIO RIVERA, SINGLE, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, AND HIS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST; MRS. EMILIO RIVERA, WIFE OF EMILIO RIVERA; PARK AVENUE ASSOCIATES, A PARTNERSHIP; VICTOR VILLARI, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, AND HIS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST; NEWS PRINTING CO., INC., A CORP.; JOSEPH DANIEL FERRARO, INDIVIDUALLY AND AS PARENT AND GUARDIAN OF PHILIP FERRARO; STATE OF NEW JERSEY; JOHN M. SCIROCCO AND DIANE F. SCIROCCO, HIS WIFE; FRANK L. ANNESE AND JENNIE L. ANNESE, HIS WIFE, DEFENDANTS, AND NORMA RIVERA; OLGA MUJER, GOEN RODRIGUEZ; ELIZABETH KALISAK AND RICHARD DRESSLER, DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued November 17, 1980.
Decided April 21, 1981.
*619 Sanford J. Becker argued the cause for appellant (Zucker, Goldberg & Weiss, attorneys).
Gregory G. Diebold argued the cause for respondents (Timothy K. Madden, Director, Hudson County Legal Services, attorney).
Hugo M. Pfaltz, Jr. argued the cause for intervenor Savings Banks' Association of New Jersey (Hugo M. Pfaltz, Jr., attorney; James A. Woller, on the brief).
*620 Michael D. Matteo submitted a brief on behalf of amicus curiae New Jersey Savings League (Myers, Matteo, Rabil & Norcross, attorneys).
Joseph Barry submitted a brief on behalf of amicus curiae Applied Housing Associates.
The opinion of the Court was delivered by SCHREIBER, J.
On May 12, 1966 John Scirocco and Frank Annese borrowed $30,000 from the Guttenberg Savings and Loan Association (Guttenberg) to purchase a building, consisting of eight residential apartments, located in Jersey City. A purchase money first mortgage was given as security for the debt. A default occurred in 1978 when the mortgage payments were not made and Guttenberg instituted foreclosure proceedings joining as defendants the mortgagors, subsequent purchasers of the property, judgment creditors and five tenants in possession, whose tenancies had been created and commenced after the mortgage had been recorded. The complaint was in the usual form requesting that the amount due on the mortgage be fixed, the equity of redemption be foreclosed, and the property be sold to satisfy the indebtedness. In a second count plaintiff demanded possession in accordance with the terms of the bond and mortgage.[1]
Four tenants filed an answer in which they denied the mortgagee was entitled to possession absent compliance with N.J.S.A. 2A:18-61.1 (Anti-Eviction Act) which permitted removal of tenants for only certain specified reasons. The defendant tenants moved to dismiss the complaint on the ground that it failed to state a claim upon which relief may be granted. The trial court denied the motion, finding that N.J.S.A. 2A:18-61.1 applied only to summary dispossess actions instituted in the county *621 district court and that therefore the statute did not affect a mortgagee's right to possession upon default by the mortgagor. 165 N.J. Super. 201 (Ch.Div. 1979).
Guttenberg then moved for an order striking the tenants' answer. Defendant submitted a cross motion for summary judgment, supported by affidavits from four tenants. In the affidavits all the tenants asserted a willingness to pay rent to Guttenberg. Three tenants also alleged that they were not residing in the building in question because they had been ordered by Jersey City's Director of Conservation to vacate their apartments which were not in habitable condition. The mortgagee submitted an affidavit in opposition stating that it had never been in possession of the building, that it had never received or sought any rent from any tenants, and that the landlord-mortgagor was the present owner. At the oral argument on the motions the attorney for defendants requested the trial court to reconsider its previous ruling and contended that the tenants had offered to pay the rent but the mortgagee refused to accept it, that the right to attorn belonged to the tenants, and that therefore a new landlord-tenant relationship subject to the Anti-Eviction Act had come into existence. The trial court rejected these arguments and reaffirmed its prior holding. Plaintiff's motion to strike the answer was granted.
Defendants requested a stay of the trial court's order. However, it appeared that the mortgagor had abandoned the property and that the City of Jersey City had declared the building unfit for habitation. Accordingly, defendants' counsel withdrew his motion for a stay. A final judgment fixing the debt due of $19,796 and ordering sale of the premises was entered on March 30, 1979.
Defendants appealed. Having been advised at oral argument that the execution sale had resulted in a purchase of the property by a third person, the Appellate Division stated it could not decide the rights, if any, the tenants might have to reoccupy *622 the premises after rehabilitation.[2] However, it found the viability of the appeal continued and the tenants' stake in the outcome of this litigation was sufficient to confer justiciability.
The Appellate Division reasoned that the purpose of the Anti-Eviction Act was to prevent evictions of tenants for unfair or arbitrary reasons, particularly at a time when a critical housing shortage existed. Since the Act applied to removal proceedings against residential tenants in the Superior Court as well as the county district court, the Appellate Division believed that the Legislature intended to include foreclosing mortgagees within the umbrella of the Act. Accordingly, it reversed. 171 N.J. Super. 418 (1979).
We granted plaintiff's petition for certification, 84 N.J. 417 (1980), and permitted the Savings Bank Association of New Jersey, New Jersey Savings League and Applied Housing Associates of Hoboken, New Jersey to intervene as amici curiae.

I.
A preliminary inquiry to be considered is whether this cause is moot. It is our understanding that the premises have been boarded up by the City of Jersey City because they are not habitable and that the property has been sold to a third person. However, the defendant tenants maintain the issues are not moot since they desire to move back into their apartments once the building is repaired and claim they have a right to do so. We have also been advised that defendants had filed a notice of lis pendens before the foreclosure sale so that any purchaser would have had knowledge of the tenants' interest in the property at the time of the sale. In view of these circumstances and the public importance of the issues, the Appellate Division decision having been reported, we address the questions on their *623 merits. See Housing Authority, Newark v. West, 69 N.J. 293, 295-296 (1976).

II.
The precise substantive issue is whether a foreclosing mortgagee of a residential apartment building may obtain a Superior Court order evicting tenants under leases subordinate to the mortgage without complying with the Anti-Eviction Act. We hold that the Act applies only to the traditional landlord-tenant relationship and not to that of a mortgagee holding a lien prior to the leasehold of a tenant in possession.
Resolution of the problem turns upon the legislative intent behind the Act which reads in pertinent part as follows:
No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the county district court or the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, ... except upon establishment of one of the following grounds as good cause: [Next follows a list of 13 grounds] [N.J.S.A. 2A:18-61.1]
The section following N.J.S.A. 2A:18-61.1 refers to the requirement that no judgment for possession shall be entered "unless the landlord has made written demand and given written notice" (emphasis supplied), which must specify "the cause of the termination of the tenancy" and which notice "shall be served ... upon the tenant or lessee...." N.J.S.A. 2A:18-61.2. The Act then states that "no landlord may evict" except for the statutory causes, N.J.S.A. 2A:18-61.3 (emphasis supplied), and that no lease may provide for "tenancy" termination other than for the statutory reasons, N.J.S.A. 2A:18-61.4.
The statutory framework is aimed at a landlord-tenant relationship. The use of the words "lessee or tenant" indicates the Legislature had in mind those occupants of residential dwelling units who had a certain correlative relationship with someone else, namely, a landlord or lessor. Otherwise the Legislature would have used a broader terminology. Furthermore, the sections of the Act should be read together. The first section, 61.1, refers to grounds for removal of lessees or tenants in the *624 county district court or the Superior Court. The second section, 61.2, relates to the necessity of demand and notice to be given by the landlord. Reference is made in this respect only to the landlord. Section 61.3 prohibits a landlord, and only a landlord, from evicting a tenant except for good cause as stated in section 61.1. The language employed in the Act shows that it is directed at the landlord-tenant relationship.
The legislative intent is also evinced by its location within the statutory scheme regulating landlord-tenant proceedings. A statute is not to be interpreted in a vacuum. In Petition of Sheffield Farms Co., 22 N.J. 548 (1956), we noted that
[t]he true meaning of an enactment and the intention of the Legislature in enacting it must be gained, not alone from the words used within the confines of the particular section involved, but from those words when read in connection with the entire enactment of which it is an integral part, Palkoski v. Garcia, 19 N.J. 175, 181 (1955). [Id. 22 N.J. at 554]
We have also made it clear that statutes "must be understood in their relation and interaction with other laws which relate to the same subject or thing; they must by construed together with these related sections in order to learn and give effect to the true meaning, intent and purpose of the legislation as a whole (citations omitted)." Appeal of N.Y State Realty & Terminal Co., 21 N.J. 90, 98 (1956).
Prior to its enactment, summary removal of residential tenants was authorized in N.J.S.A. 2A:18-53. It provided for summary actions for tenant removal in the county district court when the landlord established one of three bases: (1) the term had ended, (2) a default in rent had occurred or (3) the tenant had wilfully damaged the premises, been disorderly, violated the landlord's rules or regulations or breached a covenant of the lease where a right of reentry was reserved in the lease. In 1974, N.J.S.A. 2A:18-53 was amended to exclude "residential lessees and tenants" who were thenceforth to be subject to the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., which was enacted simultaneously with the amendment. The relationship of N.J.S.A. 2A:18-61.1 et seq. to N.J.S.A. 2A:18-53 strongly indicates *625 a legislative intent that the Anti-Eviction Act concerns only proceedings between landlord and tenant.
The frequent and consistent references in the Anti-Eviction Act to tenants and landlords, the imposition on landlords alone of the duty to give a demand and notice for possession, the restriction against evictions except for "good cause" placed only on landlords, the carving out of the summary landlord-tenant eviction proceedings of residential tenancies and relocation of those dispossess proceedings in the Anti-Eviction Act, and the placement of these provisions within the statutory scheme relating to proceedings between landlord and tenant, are cumulative indicia of the legislative intent that the Anti-Eviction Act would apply only where a landlord-tenant relationship exists.
Other factors point in the same direction. The legislative statement attached to the Act when it was proposed in the Assembly read:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord. [Statement attached to L. 1974, c. 49; emphasis supplied]
The statement referred to the actions of only "landlords" which the Act proposed to correct. K. Meiser, one of the prime drafters of the Act, wrote:
The Eviction For Cause Law affects only rights between landlords and tenants. It did not modify the rights of the state to oust a tenant through eminent domain proceedings or condemnation because the building is unfit for human habitation. Nor did it affect the right of a mortgagor [sic] to foreclose. [Meiser, Tenant-Landlord Law in New Jersey, 77 (I.C.L.E. 1978)]
The manifest legislative purpose of the Act was to curb abuses and inequities in landlord-tenant relations. In the legislative hearings before the Assembly Commerce, Industry and Professions Committee on March 5, 1974 on virtually all the then pending landlord-tenant related legislation including a proposed *626 No Cause-No Eviction Act [Assembly Bill 943 (1974)], a precursor to the Anti-Eviction Act [Assembly Bill 1586 (1974)] introduced on April 16, 1974 and enacted on June 25, 1974, witnesses referred to such landlord actions as improper service of process, nocturnal harassment, deliberately misleading leases, retaliation against tenants who complain to local authorities, and arbitrary refusal to renew leases. There was no evidence or suggestion in the hearing that mortgagees abused their status as mortgagees. See Public Hearing on Assembly Bills 58, 232, 284, 940, 943, 946, 947, 951, 953, 954, 1048 and 1060 (Landlord-Tenant) Before the New Jersey Assembly Committee on Commerce, Industry and Professions, 196th Legis., 1st Sess. (March 5, 1974). The obvious intent of the Legislature in passing the Anti-Eviction Act was to prohibit unfair and arbitrary ousters by a landlord. See Floral Park Tenants v. Project Holding, Inc., 152 N.J. Super. 582, 590-591 (Ch.Div. 1977), aff'd o.b. sub nom. Project Holding, Inc. v. Smyth, 166 N.J. Super. 354 (App.Div. 1979); Stamboulos v. McKee, 134 N.J. Super. 567, 572 (App.Div. 1975).
Property law with respect to the rights of a mortgagee vis-a-vis a subordinate tenant strongly supports our analysis of the legislative intent. It is not realistic to believe that the Legislature intended to modify that relationship by the Anti-Eviction Act without some reference to mortgagees. It has long been well settled in this State that upon and after default a mortgagee is entitled to possession of the premises. Dorman v. Fisher, 31 N.J. 13, 14 (1959); Shields v. Lozear, 34 N.J.L. 496 (E. & A. 1869); Sanderson v. Price, 21 N.J.L. 637 (E. & A. 1846); Woodside v. Adams, 40 N.J.L. 417, 422 (Sup.Ct. 1878). Until that event the mortgagor is entitled to possession. So long as the mortgage was prior to the tenancy, the mortgagee, upon default, could foreclose on the leasehold[3] and obtain an order *627 for possession against the mortgagor's tenant. American-Italian B. & L. Assn. v. Liotta, 117 N.J.L. 467 (E. & A. 1937); Fidelity Union Trust Co. v. Gerber Bros. Realty, Inc., 123 N.J. Eq. 511 (Ch. 1938); Stratford B. &. L. Assn. v. Wagner, 122 N.J. Eq. 452 (Ch. 1937); Mesiavech v. Newman, 120 N.J. Eq. 192 (Ch. 1936). When the mortgage precedes the lease, the tenant's rights can rise no higher than those of his landlord, the mortgagor. 4 American Law of Property § 16.91 at 169 (1952). The dissent acknowledges that "a lease between landlord and tenant which is entered into after the mortgage is subordinate to that mortgage." Post at 637. If this were not so, a mortgagee's security interest could be substantially impaired by disadvantageous leases adversely affecting the value of the property. Since the mortgagee upon default can take possession as against the mortgagor, the same right exists against the mortgagor's tenant. See Sanderson v. Price, 21 N.J.L. at 641. Thus the mortgagee may also repudiate the lease and consider the tenant a trespasser subject to eviction by an action of ejectment. 4 American Law of Property, supra, § 16.91 at 169; 55 Am.Jur.2d, Mortgages, § 205 at 321-322. If the Legislature had intended to modify these established fundamental property rights, it would have done so in some straightforward manner.[4] See Board of Ed., Borough of Union Beach v. N.J.E.A., 53 N.J. 29, 46 (1968); Hill v. Hill, 93 N.J. Eq. 567, 573 (Ch. 1922), aff'd 95 N.J. Eq. 233, 238-240 (E. & A. 1923).
Nor should the interpretative guide that remedial legislation be liberally construed be used as a pretext for construing the word "landlord" to include "foreclosing mortgagees." See post at 636. The liberal construction rule should be applied to effectuate legislative intent and not to distort that intent by applying the statute to an unintended subject. See Singleton v. *628 Consolidated Freightways Corp., 64 N.J. 357, 362 (1974) (court would not ignore statutory language despite remedial nature of legislation); Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 337 (1970) (statutory direction that charitable immunity statute be liberally construed held "not [to] come into play until there is a determination that the institution seeking to assert the immunity is one organized for `religious, charitable, educational or hospital purposes' within the legislative contemplation"). See also Wormack v. Howard, 33 N.J. 139, 142-143 (1960); Bowen v. Olesky, 20 N.J. 520, 525-526 (1956). It is not our function to devise protective measures for tenants, but it is our function to effectuate the legislative intent expressed in its enactment. State v. Fearick, 69 N.J. 32, 37-38 (1976); Matawan Borough v. Monmouth Cty. Tax. Bd., 51 N.J. 291, 298-299 (1968); Dobbins v. Bd. of Ed. Henry Hudson Reg. High, 133 N.J. Super. 13, 20-21 (App.Div. 1974), aff'd o.b. 67 N.J. 69 (1975). Though the Legislature may have the power to prospectively subordinate the mortgagee's rights to occupants of premises, it has not done so under the Anti-Eviction Act.
The Anti-Eviction Act refers to the nonremoval of a tenant by a county district court or the Superior Court. The trial court mistakenly believed that the reference to the Superior Court was restricted to dispossess actions instituted in the county district court and removed to the Superior Court pursuant to N.J.S.A. 2A:18-60. The Appellate Division mistakenly believed that the reference to the Superior Court indicated the Act applied to any removal proceedings irrespective of the status of the party adverse to the tenant. What the Act intended and expressed was that neither the county district courts nor the Superior Court had authority to order removal of a residential tenant by a landlord except as stated therein. The Superior Court could obtain jurisdiction not only when the cause was removed from the district court, N.J.S.A. 2A:35-1, but also when suits were started by a landlord for ejectment or other plenary action seeking removal. See Marder v. Realty Construction *629 Co., 43 N.J. 508 (1964); Aeon Realty Co. v. Arth, 144 N.J. Super. 309, 313 (App.Div. 1976).
Moreover, the Appellate Division's rationale overlooks the fact that a mortgagee could have instituted an action for possession in the county court at the time the Anti-Eviction Act was passed.[5] If the Legislature had intended the Anti-Eviction Act to eliminate a mortgagee's right to possession, then it would not have limited the jurisdictional aspects of the Act to the county district court and the Superior Court. Furthermore, the Appellate Division's interpretation of the Act, namely that the Superior Court was without power to terminate a residential tenancy except for a cause listed in the Anti-Eviction Act, irrespective of plaintiff's status as landlord, would impact upon such traditional legal proceedings as tax sale foreclosures, condemnations and quiet title actions.
Defendants argue that since some of the subparagraphs in the Anti-Eviction Act listing the various causes upon which removal may be based refer to the "landlord or owner," mortgagees are "owners" within the scope of the Act. The word "owners" has a more limited application. As indicated in the legislative hearings before the Assembly Committee on Commerce, Industry and Professions, it refers to owners who lease a substantial property, such as an apartment house, to one person who in turn rents the units to tenants. Public Hearing on Assembly Bills 58, 232, 284, 940, 943, 946, 947, 951, 953, 1084 and 1060 (Landlord-Tenant), supra at 81a. Moreover, under N.J.S.A. 2A:18-51, even though an agent of the owner may lease real estate in the agent's name, the owner has the same right to terminate the tenancy as the agent. Furthermore, "owner" also includes a landlord who is removing his rental units from the market and who intends ultimately, e.g., by converting to condominiums, to terminate his landlord status. See N.J.S.A. *630 2A:18-61.1(g) (boarding up permanently or demolishing), (h) (retiring permanently), (k) and (l) (converting from the rental market to a condominium or cooperative). Thus the references to "owner" are concerned with situations within the traditional landlord-tenant relationship. Obviously a mortgagee is not an owner and does not become an owner until and unless there is a foreclosure and sale of the premises to the mortgagee. Since foreclosure cuts off the leasehold interests, the relationship between the occupants and the purchaser at the foreclosure sale can only become that of landlord and tenant if a new tenancy is created. When a tenant wrongfully remains in possession of the premises, he is a trespasser. Sheild v. Welch, 4 N.J. 563, 568 (1950); see 22 N.J. Practice (LeWine, Landlord and Tenant Law), (3 ed. 1962), § 52 at 55.
Defendants also contend that their relationship to the mortgagee was transformed by attornment[6] into that of landlord-tenant because they offered to pay the rent when the premises become habitable. However, a mortgagee's right to the rent accrues when the mortgagee has obtained actual or constructive possession of the premises. Stewart v. Fairchild-Baldwin Co., 91 N.J. Eq. 86 (E. &. A. 1919); 30 N.J. Practice, supra, § 191 at 22-23. See also Del-New Co. v. James, 111 N.J.L. 157 (Sup.Ct. 1933). Thereafter, attornment does not occur until a mortgagee requests the tenant to pay the rent to it and the tenant does so. The tenants' contention that they have a right to attorn to the mortgagee, even though the mortgagee never took possession of the premises, is misplaced  for attornment by definition results in a landlord-tenant relationship and none could exist when the mortgagee has not taken possession. Moreover, the mortgagee may, after taking possession, reject the occupant as a tenant and maintain an action in ejectment against a tenant of the mortgagor, for the mortgagee's consent *631 is also necessary. Sanderson v. Price, 21 N.J.L. at 641. See Hands v. Russell, 115 N.J. Eq. 55 (Ch. 1933); 1 Tiffany, Landlord and Tenant, § 73(3) at 411 (1912). For a full discussion of New Jersey law on attornment and mortgages see McKenny, "The Place of Attornment in the Modern N.J. Law of Mortgages," 60 N.J.L.J. 137, 145, 153, 161 (1937).
The Appellate Division substituted its wisdom and judgment for that of the Legislature when it concluded that giving a mortgagee a greater right than that of the landlord of a residential building to evict non-offending tenants would be "anomalous." It failed to recognize that there may be substantial differences between mortgagees who are primarily interested in security for an indebtedness and landlords whose basic interest is generally in the cash flow of the enterprise. The landlord's interest hinges only on the tenancies, which the landlords normally create, modify and terminate.
Some arguments for differentiating between mortgagees and landlords have been advanced by the amici curiae. Amicus new Jersey Savings League contends that inclusion of mortgagees under the Anti-Eviction Act will accelerate the decrease in the supply of mortgage funds. It argues that the most common available mortgage insurance emanates from the Federal Housing Administration (FHA) of the Department of Housing and Urban Development (HUD). Under some circumstances when the building contains fewer than five apartments, this mortgage insurance program requires the mortgagee, following foreclosure and acquisition of the property, to convey it to the FHA in a vacant condition. See 45 Fed.Reg. 59,561 (1980) (replacing 24 C.F.R. § 203.381). If the Anti-Eviction Act prevents a mortgagee from removing tenants in these circumstances, the FHA may not accept the property and pay the insurance proceeds. The net result could lead to a reduction in mortgage funds which are already in short supply and would conflict with
[t]he avowed purpose of the federally-insured mortgage [which is] ... to provide a decent home and a suitable living environment for every American family. (42 U.S.C.A. 1441). Amendments to the operative sections over the years have *632 responded to the demands of low income families facing severe housing shortages by permitting mortgagees to accept limited down payments, reduced interest rates and longer maturity dates. (See 12 U.S.C.A. 1709[b][3], [5], [9].) [Government National Mortgage Ass'n v. Screen, 85 Misc.2d 86, 379 N.Y.S.2d 327, 329 (Sup.Ct. 1976)]
For an example of the benefits of a HUD-insured mortgage to a mortgagor, see Associated East Mortgage Co. v. Young, 163 N.J. Super. 315 (Ch.Div. 1978).
Amicus Applied Housing Associates, a developer of subsidized rehabilitated housing for low and moderate income families, argues that the Appellate Division decision will cause those local banks lending funds for rehabilitation of housing in urban centers to stop making such loans. Noting that prospects for preservation of housing may be enhanced if the building is empty, it contends banks holding mortgages on deteriorated housing will simply write off the loan or permit the mortgagor to run the building into the ground, causing constructive eviction due to lack of services. It contends that banks will take this position because they do not want to become involved in the business of operating such rental housing. This amicus asserts that housing comparable to the property involved in this case will as a result not be rehabilitated or improved to serve as decent housing.[7]
Moreover, as a matter of legislative policy it can be maintained that it would be unfair to bind a mortgagee by leases entered into improvidently by the landlord. It would be inequitable to burden mortgagees with long-term leases having insufficient inflationary protections, with leases having a cash bonus up front or with "sweetheart" leases. Comparable possibilities were considered in Mesiavech v. Newman, where the court noted:

*633 The owner of the equity of redemption [the mortgagor] could not defeat the right of the mortgagee by a lease of the premises, and secure a payment of rent in advance. To hold that such right existed would open the door for successful fraud in every case of rent-productive mortgaged premises, where the security is inadequate for the payment of the mortgage debt. [120 N.J. Eq. at 194-195, quoting Fletcher v. McKeon, 71 App.Div. 278, 75 N.Y.S. 817, 819-820 (1902)]
See, e.g., Kirkely Corp. v. Cross Bridge Towers, Inc., 91 N.J. Super. 126 (Ch.Div. 1966) (landlord, shortly prior to defaulting on its mortgage, induced tenants to prepay rents at a substantial discount). See also Note, 11 Seton Hall L.Rev. 311, 325 (1980) (criticizing the Appellate Division's opinion and commenting that, if tenants whose leaseholds commenced after the mortgage were given priority, the value of the property could be decreased and thus the Anti-Eviction Act would impair the security given for the debt).
Under some circumstances leases may, of course, be considered an asset and enhance the value of the property. However, whether that is so may not be known until the property is sold and then only if it has been offered with and without the leaseholds. In any event it can readily be seen that reasons exist for treating mortgagees and landlords differently, and whether those reasons are sufficient is a matter which rests within the Legislature's sound discretion. Property Owners Assn. of N. Bergen v. Tp. of N. Bergen, 74 N.J. 327, 338 (1977); N.J. Sports & Exposition Authority v. McCrane, 61 N.J. 1, 8-9 (1972), app. dism. sub nom. Borough of East Rutherford v. New Jersey Sports and Exposition Authority, 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972); New Jersey Mortgage Finance Agency v. McCrane, 56 N.J. 414, 422 (1970).
The statutory language, the Act's location in the statutory scheme, and the legislative history, coupled with the legislative silence relative to the traditional law governing the rights of a mortgagee against a defaulting mortgagor and those having subordinate interests in realty, lead inevitably to the conclusion that the Legislature did not intend that the Act affect a mortgagee's rights. It is only when the mortgagee's relationship *634 to the occupant becomes one of landlord-tenant that the Act applies.
The judgment is reversed and the matter remanded to the trial court for entry there of judgment for plaintiff.
PASHMAN, J., dissenting.
It is certainly true, as the majority acknowledges, that one purpose of the Anti-Eviction Act is "to curb abuses and inequities in landlord-tenant relations." Ante at 625. However, the act clearly is meant to do far more than protect residential tenants from harassment by landlords. More broadly, it is meant to afford those tenants some measure of security in the occupancy of their homes provided that no good cause exists for eviction. Furthermore, the act is a direct response to the Legislature's concern for the "critical shortage of rental housing space in New Jersey," Statement accompanying L. 1974, c. 49, a concern which, at least until today, this Court shared. E.g., Inganamort v. Borough of Fort Lee, 62 N.J. 521, 527 (1973); Marini v. Ireland, 56 N.J. 130, 146 (1970); see generally Southern Burlington County N.A.A.C.P. v. Township of Mt. Laurel, 67 N.J. 151 (1975). Because the majority gives a narrow reading to the act which not only ignores its broader purposes but actually undermines them, I dissent.
I agree with the majority that resolution of this case turns upon a determination of the legislative intent behind the act. Ante at 623. For reasons unclear to me, the majority adopts an unduly circumscribed view of this intent.
The act was passed in 1974 because of the Legislature's recognition that "residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems." Statement accompanying L. 1974, c. 49. It is obviously of no matter to an evicted tenant if he loses his home, through no fault of his own, because of arbitrary conduct on the part of his original landlord or because a mortgagee has foreclosed on a mortgage loan extended to that landlord.
*635 The strongest argument that the majority is able to muster in support of its holding is that the frequent use of the term "landlord" in the act somehow means that foreclosing mortgagees were not meant to be covered. See ante at 623-625. This argument is unpersuasive, depending as it does on the unstated premise that "landlord" and "foreclosing mortgagee" are, for purposes of the act, mutually exclusive terms. However, the term "landlord" is nowhere defined in the act (nor, for that matter, by the majority). Why, then, should it be assumed that it refers only to the party originally entering into a lease with the tenant?
In its description of good cause, the act contains many references to the "landlord or owner" of a residential building or, in several instances, simply to the "owner." N.J.S.A. 2A:18-61. 1(g), (h), (i), (k), (l) and (m). These references are persuasive evidence that the Legislature intended to afford vitally needed protection to tenants even if the person seeking to evict was not the person who originally entered into the lease with the tenant.[1] For example, if the landlord were to sell the building to another person, that purchaser would stand in the position of landlord to tenants. Thus, the statutory language indicates that the Legislature intended the act to cover all persons who had a common law right to evict a tenant.
*636 Although a foreclosing mortgagee is technically neither a landlord nor an owner, this Court should determine the scope of the act by reference to its remedial purposes, not to definitions devised for use in property law. A construction of "landlord" that encompasses foreclosing mortgagees is completely harmonious with the overall language of the anti-eviction statute, which reflects the broad purpose of safeguarding non-offending tenants from eviction. The concern of the statute is not the status of the party seeking the eviction, but the power of the court to order an eviction:

No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the county district court or the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes, other than owner-occupied premises with not more than two rental units or a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant, except upon establishment of one of the following grounds as good cause. ... [N.J.S.A. 2A:18-61.1 (emphasis added)]
Because foreclosure is not among the statutorily enumerated causes for eviction, a court has no authority to remove the residential tenants because the mortgagee has foreclosed.
In sum, the statute is remedial social legislation and, as such, should be broadly construed. Even if there are ambiguities in the statutory language, such ambiguities surely should be resolved in favor of the vulnerable class which the statute was intended to protect.
It would not be unfair in any way to hold that the act applies to foreclosing mortgagees. A mortgagee that takes a mortgage on a residential building does so fully aware that there may be tenants living there in the event of foreclosure at some future time and that its rights of foreclosure may be restricted by conflicting legal rights of the tenants. Such common law rights, like those of other landlords which are also abridged by the act, must give way before the unquestioned power of the State to regulate the use and control of residential dwellings to insure that such use conforms to the public interest. See, e.g., Dome Realty, Inc. v. City of Paterson, 83 N.J. 212 (1980); Inganamort v. Borough of Fort Lee, supra.
*637 Also troubling is the apparent belief of the majority that the common law rights of a mortgagee are sacrosanct and not subject to modification. The act affects the rights of an owner, whose interests in the property are clearly greater than those of a mortgagee. I fully agree with the conclusion of the Appellate Division that it would "be anomalous and would seriously thwart the legislative purpose" to give a foreclosing mortgagee "a greater right than that of the landlord to evict nonoffending tenants upon the landlord's financial failure." 171 N.J. Super. at 423.
Because a lease between landlord and tenant which is entered into after the mortgage is subordinate to that mortgage, foreclosure terminates that lease and a periodic tenancy arises between the foreclosing mortgagee (or any other person acquiring title subsequent to foreclosure) and the tenant. However, the tenant remains fully protected by the act and may be evicted only as permitted by the terms of the act.
The Anti-Eviction Act was broad and salutary social legislation intended to reduce the fear and insecurity of tenants that they might, for no fault of their own, suddenly face the loss of their homes. A non-offending tenant should not, in these times of acute shortage of low- and moderate-income housing, face such a loss merely because a mortgagee has foreclosed and demanded immediate possession. Nor do I believe that the Legislature intended such a result.
I would affirm the judgment of the Appellate Division that the Anti-Eviction Act applies to a foreclosing mortgagee.
Justice HANDLER joins in this dissent.
For reversal and remandment  Chief Justice WILENTZ and Justices SULLIVAN, CLIFFORD, SCHREIBER and POLLOCK  5.
For affirmance  Justices PASHMAN and HANDLER  2.
NOTES
[1] It has been said that "[a] prudent attorney will add a second count for the possession of the lands." 30 N.J. Practice (Cunningham and Tischler, Law of Mortgages), § 241 at 117 (1975).
[2] Plaintiff's counsel advised this Court at oral argument that plaintiff purchased the property at the sheriff's sale and immediately sold the property to a third person. The proceeds were insufficient to satisfy the mortgage debt and foreclosure expenses.
[3] It is, of course, important to join tenants whose leases are subsequent in time to the mortgage in the foreclosure proceeding. Unless that is done, the tenants' interest would be unaffected by foreclosure. American-Italian B. & L. Assn. v. Liotta, 117 N.J.L. 467 (E. & A. 1937).
[4] Moreover, at the legislative hearings referred to above no reference was made or consideration given to the mortgagees' property rights. See Public Hearings on Assembly Bills 58, 232, 284, 940, 943, 946, 947, 951, 953, 954, 1084 and 1060 (Landlord-Tenant), supra.
[5] In 1979 the county court system was abolished. The Anti-Eviction Act became effective in 1974.
[6] N.J.S.A. 46:8-1 generally provides that an attornment between a tenant and stranger to the title is null and void, but excepts an attornment "to a mortgagee after the mortgage has become forfeited."
[7] Adoption of the Appellate Division holding might also involve questions under the Contract Clauses in the federal, U.S.Const., Art. I, § 10, par. 1, and state, N.J.Const. (1947), Art. IV, § 7, par. 3, constitutions. See Fidelity Union Trust Co. v. N.J. Highway Auth., 85 N.J. 277 (1981); Stamboulos v. McKee, 134 N.J. Super. 567 (App.Div. 1975) (upholding the constitutionality of the Anti-Eviction Act's restrictions on a landlord's right to evict tenants).
[1] The effort of the majority to avoid the significance of the term "owner" in the statute by ascribing a novel meaning to it, ante at 629-630, suggests that the majority is willing to go to great lengths to give an unnaturally narrow reading to the act. This definition of "owner" has no basis in either logic or law.

The majority's authority for the definition is derived from a public hearing held in Newark on March 5, 1974 before six members of the Assembly committee sponsoring the bill. The specific statement relied upon by the majority was not even made in reference to the act but was in fact a comment made by a member of the public in regard to Assembly Bill 947, a bill to require landlord identity and disclosure, subsequently enacted as N.J.S.A. 46:8-27 et seq. Public hearing before Assembly Commerce, Industry and Professions Committee on Assembly Bills 58, 232, 284, 940, 943, 946, 947, 951, 953, 954, 1048 and 1060, March 5, 1974 at 81A.